John A. ADDISON, Appellant-Claimant,

v.

REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION, William H. Skinner and David L. Adams, as Members of and as constituting the Review Board of the Indiana Employment Security Division and Clark Oil Company, Clermont Branch, Appellees-Respondents.

No. 2–479A116.

Court of Appeals of Indiana, Fourth District.

Dec. 17, 1979.

Tony H. Abbott, Yeager, Foley, McLin & Cutter, Indianapolis, for appellant-claimant.

Gregory F. Hahn, Dillon, Hardamon, Cohen, Indianapolis, Nathaniel Ruff, East Chicago, for appellees-respondents.

CHIPMAN, Judge.

Claimant John A. Addison appeals from the decision of the Review Board of the Indiana Employment Security Division (Review Board) which found his discharge by the Clark Oil Company (employer) was for just cause.

We vacate the decision of the Review Board and remand the case for a new hearing.

Addison presents the following issues for our consideration:

1) Whether he was afforded procedural due process at the agency level,

2) Whether there was sufficient evidence to support the finding that Addison was discharged for just cause, and

3) Whether the Review Board acted in a manner contrary to law by affirming the hearing referee's decision. Because of our resolution of the first issue, we find it unnecessary to address the latter two.

Addison was employed by the Clark Oil Company to manage a service station located in Anderson, Indiana. On Thursday, May 18, 1978, the employer's representative, Farron Brown, advised Addison, because of a business reorganization, it was necessary for Addison to be demoted from manager to assistant manager of the station. Addison accepted the new position, although there were apparently some hard feelings surrounding the demotion.

On Monday of the following week, Addison called in sick stating he was suffering from a bad cold and was not certain when he would return to work, although he estimated it would be Thursday or Friday. Appellant did not report to work the following Tuesday or Wednesday. On Wednesday afternoon, Farron Brown telephoned Addison to find out when he would return to the job. It was this phone call which precipitated Addison's discharge. According to Addison's version of the conversation, he told Brown he was still suffering from a bad cold but thought he could return on Thursday or Friday of that week. In response, Brown allegedly stated he had to have someone right away and would not "put up with that stuff." According to Brown's version of the conversation, Addison stated, "I don't know whether I'm ever going to come back to work," and "I don't know what I'm going to do and I'm not going to tell you what I'm going to do." Brown flatly denied Addison estimated his return to be on Thursday or Friday.

The hearing referee found Addison's absences were for good cause, i. e. illness, but that Addison failed to protect his employment when he would not indicate to his employer whether he would ever return to work. The Review Board adopted the referee's findings and conclusions *in toto*.

## ADMINISTRATIVE DUE PROCESS

█ Addison claims he was denied a fair hearing at the agency level. Ind.Code 22–4–17–3 provides in part:

[A] referee, after affording the parties a reasonable opportunity for fair hearing, shall affirm, modify or reverse the findings of fact and decision of the deputy.

The language of the statute implies that the same referee who provides the parties with a "fair hearing" will be the referee who either affirms, modifies or reverses the findings of the deputy. However, the record in this case discloses two hearing officers were involved in the administrative hearing below. Addison testified before referee Thomas Atz on July 30, 1978; the hearing was then continued until September 15, 1978, at which time a second referee, Joseph Kivett, heard evidence on behalf of Addison's employer. It was referee Atz who then issued findings of fact and conclusions, denying Addison's claim. On appeal, Addison argues it was improper for referee Atz to render a decision in this matter when he had not heard all the evidence. In short, Addison argues due process requires "the one who decides must hear." We agree and hold the claimant was denied a fair hearing.

One need not search far to discover the significance our legal system has attached to a trier of fact's ability to observe the demeanor of witnesses and thereby evaluate their credibility. Countless times our Appellate Courts defer to findings of fact made by administrative agencies, judges or juries, reviewing evidence only in a light most favorable to the decision below. This standard of review is in recognition of the trier of fact's intelligence and understanding, coupled with their opportunity to personally hear the witnesses and observe their conduct in the act of testifying. In legal concept, the appearance and demeanor of a witness is "assumed to be in evidence." Wigmore on Evidence, 3rd ed. § 946.

In *Urbanational Developers, Inc. v. Shamrock Engineering, Inc.,* (1978) Ind. App., 372 N.E.2d 742, the Third District considered the propriety of a special judge's attempt to make credibility evaluations of witnesses whose testimony he had not heard. A successor judge, who did not preside at trial, was appointed to rule on a motion to correct errors pursuant to Ind. Rules of Procedure, Trial Rule 53.1. Holding it was improper for the special judge to weigh evidence and determine the credibility of witnesses when ruling on the motion, Judge Hoffman wrote:

> [T]here remain instances in which the successor judge's failure to preside at trial renders him ill-equipped to perform the functions of the regular trial judge. One of these instances occurs when he is confronted with an issue which requires for its resolution a determination of the credibility of witnesses or the weight to be accorded certain evidence.
>
> . . . . .
>
> When a successor judge attempts to resolve questions of credibility and weight of evidence without having had an opportunity to hear the evidence and observe the demeanor of witnesses, *he is depriving a party of an essential element of the trial process.* (emphasis added)

372 N.E.2d at 746. Judge Hoffman states to hold otherwise would be to grant a power of review to the successor judge not even claimed by appellate courts.

While *Urbanational* did not involve an administrative fact finding process, it cannot be said that observations of an administrative trier of fact are any less critical, especially to the extent material facts in the case depend upon the determination of credibility of witnesses as shown by their demeanor or conduct at a hearing. In *City of Mishawaka v. Stewart,* (1974) 261 Ind. 670, 310 N.E.2d 65, our Supreme Court acknowledged that proceedings before administrative bodies are not required to be conducted with all the procedural safeguards afforded by judicial proceedings; however, the court expressly noted the existence of certain minimum procedural requirements:

> There are, nevertheless, standards below which we should not go. These standards, logically, should be at the highest level that is workable under the circumstances.

310 N.E.2d at 68. By requiring an administrative procedure conducted at the "highest level that is workable under the circumstances," the court recognized that considerations of administrative efficiency and convenience cannot devour what must remain a fair and meaningful agency determination in accordance with due process.

In the case of *Gamble-Skogmo, Inc. v. Federal Trade Commission,* 211 F.2d 106 (8th Cir. 1954), the original trial examiner was retired automatically at the age of 70 and relieved of further duties after having heard all the evidence. A new trial examiner, after a cold-print reading of the record, issued findings of fact and conclusions which constituted a recommended decision to the Commission. The Commission adopted both the findings and conclusions of the second trial examiner. On appeal, the company argued it was denied due process when the commission refused to grant a *de novo* receiving of evidence before the second hearing examiner. The court stated:

> The object and the consequence of this guaranty [that the decision be made by the examiner who had conducted the hearing and received the evidence] would inherently be to make direct credibility evaluation by a trial examiner constitute a processive element or factor in the arriving at of intermediate administrative findings, conclusions and decisions, submitted to an agency . . . . The opportunity to make that evaluation on a direct basis, and the contribution to the soundness of a result from this having been done . . . have generally been regarded, in the processive aspect of attaining justice, as inherently tending to more probable fairness and readier acceptance of . . . quasi-judicial decisions. [Bracketed material supplied]

211 F.2d at 113. The court in *Gamble* emphasized that after review of the record, it was clear the second trial examiner's recommended decision was based in controlling measure upon the credibility evaluation which he made between the opposing witnesses in their irreconcilable testimony. The court then remanded the case for a *de novo* receiving of evidence.

Other courts have reached similar results. In *Asbury Park v. Department of Civil Service,* (1955) 17 N.J. 419, 111 A.2d 625, the Civil Service Commission's decision reversing the suspension of two policemen for conduct unbecoming an officer was held invalid by the Supreme Court of New Jersey. The policemen were originally suspended for their involvement with two women. However, the women's testimony was heard by only one commissioner, while the testimony of the remaining witnesses, including the police officers, was heard by two other commissioners. The court stated:

> [F]airness and impartiality can only be assured when the members participating in the deliberations and decision of the board or commission, following a hearing on employee performance, have had an equal opportunity to hear and evaluate all of the evidence presented at the hearing.

111 A.2d at 626.

In *Feldman v. Board of Pharmacy,* (1960) (D.C.Mun.App.), 160 A.2d 100, *affirmed* 108 U.S.App.D.C. 46, 279 F.2d 821, the District of Columbia Pharmacy Board denied Feldman's application for renewal of his pharmacist's license on the grounds that Feldman had wilfully filled prescriptions incorrectly. Feldman claimed he was denied due process because his case was decided by four board members who were not present at the hearing of testimony. The court noted Feldman's denials of wrongdoing had been emphatic and there were important areas where credibility of witnesses was a vital factor. Holding the circumstances required the Board to exercise judgment judicial in nature in weighing and appreciating the credibility and persuasiveness of testimony by personally hearing the witnesses, the court stated:

> [W]hen that opportunity is lacking and weight and credibility of evidence are invoked, there is also lacking an essential ingredient of due process.

160 A.2d at 103.

In this case, the need for a meaningful credibility evaluation is readily apparent. Addison, the claimant, and Brown, the employer's representative, were the only witnesses. Addison testified he told Brown he would most likely return to work on Thursday or Friday of the week in question. Brown denied Addison made any such statement, and instead testified Addison

would not say if he would *ever* return to work. Had Addison been believed, he could not have been found discharged for just cause; one cannot be expected to predict the course of one's illness with certainty. If, however, Brown is believed, Addison's termination was for just cause. The discrepancy in the witnesses' testimony can hardly be attributed to faded memories. A credibility judgment was *the* determinative factor. We believe in a case such as this, where the material issue requires for its resolution a determination of the credibility of witnesses, due process requires a meaningful credibility evaluation by the administrative trier of fact.[1] We find a meaningful evaluation was lacking in this case.

Referee Atz, who issued findings of fact and conclusions which were later adopted by the Review Board, did not make an independent judgment as to the credibility of the employer's representative, Farron Brown. The referee adopted as true the contradictory testimony of a witness he did not question or observe. While referee Kivett did hear the testimony of Brown, Kivett was not the trier of fact. While Atz did hear the testimony of Addison, he heard only half the evidence to be weighed. Due process requires the administrative trier of fact hear all the evidence necessary to make a meaningful credibility evaluation. We believe this standard is consistent with our Supreme Court's declaration that the administrative process operate at the "highest level" workable under the circumstances. While wide latitude is allowed an administrative body in the conduct of its hearing, due process must be afforded those whose rights are affected. *Ervin v. Review Board of Indiana Employment Security Division, et al.,* (1977) Ind.App., 364 N.E.2d 1189.

The decision of the Review Board is therefore vacated and this case is remanded for a new hearing by the Employment Security Division.

MILLER, P. J., and YOUNG, J., concur.

---

1. Appellees argue the Review Board, and not the hearing referee, is the ultimate trier of fact at the agency level, and therefore, if the Board can make *de novo* findings based upon the record, Addison cannot be prejudiced because different referees heard the evidence below. However, this argument ignores the fact the Review Board often times relies on the referee's ability and opportunity to make direct credibility evaluations and adopts (as it did in this case) the findings of the hearing referee *in toto,* without receiving additional evidence.