451 N.E.2d 371 (1983)
PUBLIC SERVICE COMPANY OF INDIANA, Inc., Appellant,
v.
REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION, William H. Skinner, David L. Adams, and Paul M. Hutson, As Members of and As Constituting the Review Board of the Indiana Employment Security Division, and R.T. Crutcher, Appellees.
No. 2-1281A401.
Court of Appeals of Indiana, Second District.
July 28, 1983.
*372 R. Brent Gambill, Plainfield, for appellant.
Linley E. Pearson, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellees.
SULLIVAN, Judge.
Employer, Public Service Company of Indiana (PSCI), appeals the decision of the Review Board of the Indiana Employment Security Division awarding claimant R.T. Crutcher (Crutcher) unemployment benefits on grounds that he had been discharged without good cause.
We reverse.
We are confronted with essentially one issue for review: whether the Board erred as a matter of law in requiring the employer to introduce corroborating evidence to sustain its burden of proving by a preponderance of the evidence that Crutcher had sexually harassed two fellow employees.
The evidence adduced at the hearing before the appeals referee indicated that Crutcher was employed by PSCI as a janitor from December 21, 1979 through June 22, 1981.
Betsie Routh testified that on June 18, 1981 at approximately 7:30 p.m., she and another employee, Becky Steinbaker were observing a company softball game when they left briefly to use the restroom on the PSCI premises. Upon entering the restroom, they saw Crutcher inside cleaning. Crutcher stated that he had asked them to use another restroom but that they insisted on using this one. This was contradicted by the female employees.
As Betsie Routh left the restroom and while Becky Steinbaker was still inside, she saw Crutcher standing immediately outside. She walked up to him and he allegedly made a comment about her shorts, and her halter top. She stated that he also asked her how she acquired her sunburn, and after she told him how, he reached out his hand and stroked her around her rib cage, on her shoulder, and down her arm as she started to walk away. Ms. Steinbaker soon came out and told her that Crutcher had patted her buttocks. Ms. Steinbaker's testimony essentially corroborated Ms. Routh's testimony. Both women were offended by such behavior and reported the incident to security officer, Dale Jordan, who subsequently made a written report to Samuel Johnson, manager of general headquarters and field facilities.
Mr. Johnson, along with an affirmative action officer and an administrative director held a conference on June 22, at which time Crutcher was questioned about the incident. According to Johnson, Crutcher initially denied either speaking to or touching the female employees, however, upon further questioning, Crutcher later admitted speaking to them.
James Zellers, Crutcher's immediate supervisor, testified that he had previously reprimanded Crutcher for allegedly patting another female employee's buttocks. Crutcher had maintained that he had only touched her arm.
Crutcher denied having spoken or touched Betsie Routh and Beckie Steinbaker. Because Crutcher violated the employer's rule against sexual harassment on at least two occasions, Crutcher was given the option of either resigning or being discharged. Crutcher resigned.[1]
*373 In the appeals referee's findings of facts, which were adopted by the Board, he stated:
"On or about June 18, 1981, two female employees of this employer were on the employer premises observing a softball game. At approximately 7:30 p.m., the two women needed to use the restroom. They entered the employer's main building. The two female employees went into a restroom which had the door propped open with a cleaning cart. The claimant was within the restroom cleaning. When the two female employees entered, he asked them to use another facility. They persisted and the claimant left the restroom. The claimant waited in the corridor. One of the female employees exited the bathroom while the other remained inside. She walked past the claimant and waited for her friend in a lobby area. The claimant did not talk to the female employee or touch her. A short time later, the second female employee exited and also walked by the claimant. The claimant did not talk to or touch this employee. Neither of the female employees observed any unauthorized touching against the other by the claimant." Record at 99 (emphasis supplied).
However, in the section entitled "Conclusions of Law," the referee made these observations:
"I find that the claimant was discharged, but not for proven just cause within the meaning of the Indiana Employment Security Act. The allegations made against the claimant can be divided into two specific acts. The first act involved a female co-worked who exited the restroom first. She alleges that the claimant touched her right side and rubbed her rib cage toward the mid-section of her body. As she attempted to walk away from the claimant, he placed his hand on her shoulder and as she was moving away from him, let his hand trail down her arm until she was out of his reach. She indicates that the claimant did not grab or try to restrain her, but that there was an unauthorized touching. No one else witnessed this event. While she waited for her friend in a slightly removed area, she could not see what transpired when her friend exited the restroom. The second female to exit, indicates that as she left the restroom, the claimant patted her on her "butt". Again, no one witnessed this unauthorized touching. The employer conducted an investigation of these allegations after the two women had reported this incident the following day to security. The employer conducted a fact finding meeting which lasted between two and three hours. The claimant denied involvement in the incident with respect to the unauthorized touching. The claimant was given the option of resigning or being discharged. The claimant was found to be illiterate. The employer offered to draft a resignation statement for him. The claimant agreed and signed this document. Under these circumstances, the claimant cannot be held to have voluntarily left employment. The evidence establishes that the claimant left employment in lieu of imminent discharge which in effect is a discharge. The two female employees involved testified at the referee's hearing in this matter. The evidence they presented was credible. However, the burden of proof on a discharge case rests with the employer. Due to the fact that the two separate touching incidents were not witnessed by any other person besides those immediately involved, I find that the employer has failed to carry its burden of proof in this case. This finding is based upon the fact that in each incident, the allegation becomes in essence the female employees' word against the claimant's word. As previously stated, the claimant denies each and every material allegation made against him by each of the two female employees. Without corroborating evidence to substantiate *374 these allegations, I find that the employer has failed to carry its burden of proof to show that the discharge was for just cause by a preponderance of the evidence. Record at 100 (emphasis supplied).
If we were to focus solely upon what the Board has characterized as its "findings of fact," it would appear that the Board, through the referee, simply weighed the conflicting evidence and reached the factual finding that the sexual harassment incident did not occur. In such circumstance, we would be compelled to give substantial deference to the agency's findings, inasmuch as the agency, and not this court, has the opportunity to hear and see the witnesses and the exhibits. We are cognizant that we are prohibited from reweighing the evidence or judging the credibility of witnesses but must accept the facts as found by the Board. Gold Bond Building Products Division National Gypsum Co., Shoals Plant v. Review Board of the Indiana Employment Security Division (2d Dist. 1976) 169 Ind. App. 478, 349 N.E.2d 258, 268.
However, we choose not to exalt form over substance. Although the referee's discussion was under the heading "conclusions of law," some of his preliminary comments were in essence a continuation of his findings of fact rather than legal conclusions. He discusses both the allegations of the female employees and Crutcher's denial of these allegations. He notes that no one except each victim herself witnessed the act of harassment. He further observed that the testimony of the female employees was indeed "credible." The referee's characterization of their testimony as being credible appears inconsistent with the Board's contention that the referee arrived at his finding by simply weighing the evidence and judging the credibility of the witnesses. The referee did not find Crutcher's testimony to be more credible than the women's. Nor did he find that the evidence preponderated in favor of Crutcher. Rather, what the referee did find, and was substantially influenced by, was the absence of other eyewitnesses to corroborate the women's testimony. He explicitly stated that his ultimate finding that the employer failed to sustain its burden of proof was based entirely on the absence of corroborating evidence. The referee apparently believed that since he was faced with the claimant's word pitted against the women's, he was compelled to find in favor of claimant because the employer failed to introduce corroborating evidence.
Whether the employer was required to furnish corroborating evidence in order to sustain its burden of proof is a question of law. In resolving this question, we need not accord the same degree of deference to the agency's conclusion as we would be compelled to do were we confronted with a question of fact. See Public Service Commission v. City of Indianapolis (1956) 235 Ind. 70, 131 N.E.2d 308, 312-313.
As the Board readily concedes, there is no statutory provision under the Employment Security Act, nor judicial authority for the rule that the employer must provide corroborating evidence in order to meet its burden of proof. Indeed, the Board itself has in the past rendered a decision on the implicit assumption that corroborating evidence was not necessary. In Ervin v. Review Board of the Indiana Employment Security Division (3d Dist. 1977) 173 Ind. App. 592, 364 N.E.2d 1189, the Board was faced with an uncorroborated allegation by a female employee that claimant had made several sexual advances toward her. Although Ervin denied this allegation, the Board nevertheless concluded that he had been discharged for just cause.
We also find persuasive the fact that in a criminal proceeding the State need not introduce evidence corroborating the prosecutrix's testimony in order to sustain its burden of proving a defendant guilty of rape beyond a reasonable doubt. See Lottie v. State (1980) Ind., 406 N.E.2d 632; Chester-field v. State (1923) 194 Ind. 282, 141 N.E. 632. An allegation of sexual harassment is analogous to the extent that the act is almost always done by stealth and away from the public's view. Therefore, it is often difficult for the victim to obtain eyewitness corroboration. If, in meeting its *375 more stringent beyond a reasonable doubt burden of proof, the State need not adduce such corroborating evidence, an employer need not do so in meeting the lesser preponderance of the evidence standard.
The Board's erroneous assumption that it was incumbent upon the employer to produce evidence which corroborated the testimony of sexual harassment "improperly influenced" its final determination that claimant had been discharged without good cause. See Public Service Commission v. City of Indianapolis, supra, 131 N.E.2d at 312-313. Where the result of the hearing before the agency was substantially influenced by improper considerations, the Board's decision cannot be upheld. Williamson Co. v. Review Board of Indiana Employment Security Division (1969) 145 Ind. App. 266, 274, 250 N.E.2d 612, 616.
We, therefore, hold that the Board's ultimate finding that claimant had not been discharged for just cause was contrary to law. We reverse the Board's decision and remand this cause for further proceedings consistent with this opinion.[2]
BUCHANAN, C.J., and SHIELDS, J., concur.
NOTES
[1] The Board construed this to be a "constructive" discharge, and because appellant does not contest this characterization, we consider the case to involve a termination rather than a resignation.
[2] We need not address the question whether upon remand, the Review Board can dispense with its own independent evidentiary hearing and rely upon the referee's findings. To the extent that the determinative factor of the Board's resolution whether Crutcher had been discharged for just cause proves solely to be a "credibility judgment," we are doubtful whether the Board can simply adopt the referee's findings and conclusions of law without benefit of its own independent hearing. As we have recently held in Addison v. Review Board of the Indiana Employment Security Division (4th Dist. 1979) Ind. App., 397 N.E.2d 1037, 1041, "where the material issue requires for its solution a determination of the credibility of witnesses, due process requires a meaningful credibility evaluation by the administrative trier of fact." Accord, Tauteris v. Review Board of the Indiana Employment Security Division (3d Dist. 1980) Ind. App., 409 N.E.2d 1192. Whether the Board, as the ultimate trier of fact, affords the parties a "meaningful credibility evaluation" by merely adopting and "rubber stamping" the appeals referee's credibility assessment remains to be resolved. However, we reserve judgment on this issue until it is directly presented for review.